## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

| | |
|---|---|
| **BRAD BOLIN,**<br><br>*Plaintiff*,<br><br>**V.**<br><br>**DEPUTY LANDON WILKINS,** in his official and individual capacities;<br>**DEPUTY REEVE KOEHLER,** in his official and individual capacities;<br>**CORPORAL BENJAMIN VINSON, JR.,** in his official and individual capacities;<br>**DEPUTY DAVID FISCHER,** in his official and individual capacities;<br>**SERGEANT LEVI FRANKS,** in his official and individual capacities;<br>**DEPUTY A. LOYA,** in his official and individual capacities;<br>**MPO SAMUEL MOSLEY,** in his individual capacity;<br>**NINE UNKNOWN NAMED DEPUTY OFFICERS OF BENTON COUNTY, ARKANSAS,** in their individual and official capacities;<br>**SHERIFF SHAWN HOLLOWAY,** in his official capacity; and<br>**BENTON COUNTY, ARKANSAS**<br><br>*Defendants*. | Civil Action No. _____<br><br>**JURY TRIAL DEMANDED** |

## **COMPLAINT**

Plaintiff Brad Bolin ("Plaintiff" or "Mr. Bolin"), by and through his attorneys, submits this Complaint against the above-captioned Defendants as follows:

### **Parties**

1. Plaintiff Brad Bolin is an individual and was detained in the Benton County Detention Center in Benton County, Arkansas, on April 1, 2020, when he was assaulted by Benton County deputy sheriffs.

**COMPLAINT** – Page 1

2. Defendant Deputy Landon Wilkins ("Deputy Wilkins") is a law enforcement/correctional officer employed by the Benton County, Arkansas Sheriff's Office.

3. Defendant Deputy Reeve Koehler ("Deputy Koehler") is a law enforcement/correctional officer employed by the Benton County, Arkansas Sheriff's Office.

4. Defendant Corporal Benjamin Vinson, Jr. ("Corporal Vinson") is a law enforcement/correctional officer employed by the Benton County, Arkansas Sheriff's Office.

5. Defendant Deputy David Fischer ("Deputy Fischer") is a law enforcement/correctional officer employed by the Benton County, Arkansas Sheriff's Office.

6. Defendant Sergeant Levi Franks ("Sergeant Franks") is a law enforcement/correctional officer employed by the Benton County, Arkansas Sheriff's Office.

7. Defendant Deputy A. Loya ("Deputy Loya") is a law enforcement/correctional officer employed by the Benton County, Arkansas Sheriff's Office.

8. Defendant MPO Samuel Mosley ("MPO Mosley") is a law enforcement/correctional officer employed by City of Rogers, Arkansas Police Department.

9. Defendants Nine Unknown Named Deputy Officers are law enforcement/correctional officers employed by Benton County, Arkansas Sheriff's Office.

10. Defendant Sheriff Shawn Holloway ("Sheriff Holloway") is the elected Sheriff of Benton County, Arkansas, and was the elected sheriff at the time of these events.

11. Defendant Benton County, Arkansas is the municipality in which the Sheriff's Office of Benton County, Arkansas, is located in the Western District of Arkansas.

**Jurisdiction, and Venue**

12. Jurisdiction is proper in this court because all Defendants reside in this judicial district, all the facts relevant to this case occurred in Benton County, Arkansas, and Plaintiff asserts a federal cause of action pursuant to 42 U.S.C. § 1983.

13. Venue is proper in this court pursuant to 28 U.S.C. § 1391 because all Defendants reside in this state and judicial district and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

**Facts**

14. This action seeks to vindicate Mr. Bolin's federally protected rights pursuant to 42 U.S.C. § 1983 ("§ 1983") and other laws for injuries caused to Mr. Bolin by the Defendants' use of excessive force against Mr. Bolin in violation of Mr. Bolin's constitutional rights.

15. On April 1, 2020, at approximately 1:00 a.m., following his arrest for charges of Resisting Arrest (Misdemeanor), Disorderly Conduct (Misdemeanor), Public Intoxication (Misdemeanor), and Battery in the Second Degree (Class B Felony), Mr. Bolin was booked into the Benton County Jail (the "Jail") in Bentonville, Arkansas.

16. During the intake process, five (5) Benton County officers, including Deputy Loya, MPO Mosley, and three (3) of the Unknown Named Deputy Officers, were surrounding Mr. Bolin while he was being fingerprinted and completing the intake process. After a Mr. Bolin's fingerprints are document, his hands are placed behind his back, and he turns and faces the wall. As Mr. Bolin turns to face the wall, as instructed, two (2) additional Unknown Named Deputy Officers enter the booking area.

17. At approximately 1:10 a.m., while Mr. Bolin's hands are behind his back and his face is on the wall and he was not resisting, posing any physical threat, or in any way provoking

any officer, all seven (7) Benton County Defendant Officers present decide to throw Mr. Bolin to the ground by grabbing his arms, legs, and neck.

18.     Once on the ground, all seven (7) Defendant Officers, including Deputy Loya, MPO Mosley, and five (5) of the Unknown Named Officers, proceed to hold Mr. Bolin down while they punch and knee him multiple times resulting in multiple injuries to Mr. Bolin's face and body.

19.     At no time was Mr. Bolin fighting back against Defendant Officers or otherwise not complying with any of the Officers' instructions.  He did not attempt to punch back or cause any other intentional physical harm to Defendant Officers or others.

20.     Once the Defendant officers complete their beating of Mr. Bolin, they stand him up and walk him to a holding cell in "Booking Lobby B."

21.     Once in the cell, Defendant Officers instruct Mr. Bolin to get on his knees and place his hands on the wall.  He complied fully with these requests.

22.     At approximately 1:14 a.m., one (1) Defendant Officer Unknown Named remains standing in the cell with his taser drawn and pointed at Mr. Bolin as the other officers exit the cell. While Mr. Bolin is still on his knees in his cell, Defendant Officer Unknown Named deployed his taser at Mr. Bolin striking him.

23.     Once the Defendant Officer Unknown Named exits the cell, Mr. Bolin stands up and walks to the window of his cell holding his face in pain and attempts to get someone's attention that he is injured and needs medical attention. Mr. Bolin was ignored.

24.     At approximately 2:15 a.m., four (4) of the Unknown Named Defendant Officers enter Mr. Bolin's holding cell wearing gas masks. They escort Mr. Bolin from his cell to a room across the lobby.

**COMPLAINT** – Page 4

25. After approximately seven (7) minutes, the Unknown Named Defendant Officers escort Mr. Bolin, who is now wearing stripes, out of the room and into a different holding cell in the Booking Lobby.

26. The four (4) Unknown Named Defendant Officers still wearing gas masks and one (1) additional officer not wearing a gas mask walk Mr. Bolin, who is handcuffed, into the holding cell. With his hands cuffed behind his back and while he was not resisting, posing any physical threat, or in any way provoking any officer, the Defendant Officers slam Mr. Bolin onto his stomach on the ground and begin punching and kicking him again.

27. At approximately 2:25 a.m., after the Defendant Officers complete their beating of Mr. Bolin, they exit the cell leaving Mr. Bolin laying on his stomach on the ground.

28. Mr. Bolin stands up and attempts to tell a Deputy Officer standing outside of his cell that he again needs medical attention. His requests are ignored again.

29. On the morning of April 1, 2020, at approximately 9:25 a.m., Mr. Bolin was instructed to walk down the E-pod hallway to be released from the Jail following his bail being posted.

30. On that day, Defendant Deputy Wilkins was assigned to E-pod.  Once Mr. Bolin reaches the end of the hallway, Deputy Wilkins instructs him to stop. While Mr. Bolin was waiting in the hallway as instructed, Deputy Wilkins instructed Mr. Bolin to face the wall and place his hands on the wall.  Mr. Bolin asked Deputy Wilkins to clarify what he was wanting Mr. Bolin to do; once clarified, Mr. Bolin placed his belongings on the ground and turned to face the wall and began to place his hands on the wall.

31. While Mr. Bolin had his hands against the wall, as instructed and was not resisting, posing any physical threat, or in any way provoking anyone, Deputy Wilkins decided to throw Mr. Bolin to the concrete floor and into the wall on the opposite side.

32. From there, Deputy Wilkins proceeded to climb on top of Mr. Bolin. With Deputy Wilkins full body weight on top of Mr. Bolin and Mr. Bolin on his side, Deputy Wilkins' pressed his legs and knees into Mr. Bolin's back.

33. After trying to move Mr. Bolin around on the floor for a few seconds, while Mr. Bolin was on his side and unable to move, Deputy Wilkins began to punch Mr. Bolin in the face and head with a closed fist. Deputy Wilkins continued to punch Mr. Bolin in the head and face at least 10 times before other officers arrived.

34. At no time was Mr. Bolin fighting back against Deputy Wilkins or otherwise not complying with Deputy Wilkins' instructions. He did not attempt to punch back or cause any other intentional physical harm to Deputy Wilkins or others.

35. While Deputy Wilkins was still punching Mr. Bolin about the face and head, other Defendant Officers arrived in the E-pod hallway, including, Defendants Deputy Koehler, Deputy Fischer, Corporal Vinson, and Sergeant Franks.

36. When they arrived, instead of stopping Deputy Wilkins, the other Defendant Officers allowed Deputy Wilkins to continue striking Mr. Bolin in the face and joined him in striking Mr. Bolin in other areas of his body.

37. A few seconds later, Sergeant Franks pushes his way into the crowd of Defendant Officers beating Mr. Bolin, places his taser on Mr. Bolin's body and deploys his taser directly on Mr. Bolin striking him.

38. When the Defendant Officers stopped beating Mr. Bolin, they rolled Mr. Bolin on his stomach and pulled his hands behind his back. At this point, they had struck Mr. Bolin at least 20 times with closed fists and tased him while he was lying defenseless on the ground.

39. Once the Defendant Officers stopped their unreasonable and excessive uses of force against Mr. Bolin, it was clear he was injured by the blood pouring from his face and pooling onto the floor.

40. Because of this violent beating delivered by Defendant Officers on Mr. Bolin, he suffered additional serious physical injuries including lacerations, bruises, soft tissue damage, and more.

41. Following a brief exam at the nurses' station, due to the severity and extent of his injuries, the nurses instructed Officers that Mr. Bolin needed to be taken to the hospital.

42. This use of excessive force was clearly malicious and sadistic because Mr. Bolin was not posing a physical threat to any person and the Defendant Officer's actions were not used in a good faith attempt to restore discipline.

43. Transportation deputies took Mr. Bolin to Mercy Hospital in Rogers, Arkansas where he finally received medical treatment for his numerous lacerations and contusions, head pain, and chest pain.

44. Ultimately, the Defendant Officers, acting with the permission and training of Sheriff Holloway and the Benton County Sheriff's Office, delivered three brutal and unjustified beatings to Mr. Bolin leaving him seriously injured and landing Mr. Bolin in the hospital.

45. In addition to the actions of the Defendant Officers who used excessive force directly against Mr. Bolin, the Sheriff's Office, Sheriff Holloway, and Benton County, Arkansas violated Mr. Bolin's federally protected rights by maintaining official policies, unofficial customs,

and demonstrating a deliberate indifference towards and failure to train their officers properly, which caused Mr. Bolin's multiple serious injuries.

46. These policies, customs, and the failure to train led directly to Defendants' violent actions and attitudes. This is evidenced by the Sheriff's Office's failure to take disciplinary action against Defendant Officers for their excessive uses of force against Mr. Bolin.

47. To this day, Mr. Bolin continues to suffer health problems that will continue for the foreseeable future, and potentially permanently, as the direct result of the Defendants' vicious uses of grossly excessive force, including:

    (a) Mr. Bolin's left eye remains stationary while his right eye moves;

    (b) Pain and pressure in his right eye;

    (c) Diminished vision in his right eye;

    (d) Neurological injuries and reduced cognitive function, including in the form of diminished short term memory ability, requiring Mr. Bolin to keep a notebook to help him remember recent events or activities.

48. Mr. Bolin's injuries have been suffered in the past, he continues to suffer injuries in the present, and his injuries will continue for the foreseeable future, and possibly permanently.

49. Mr. Bolin's injuries have caused him significant monetary damages in the form of medical and other expenses, in an amount to be proven at trial.

## Causes of Action

**COUNT I: Violation of Fourteenth Amendment Rights pursuant to 42 U.S.C. § 1983**

50. Mr. Bolin incorporates all previous paragraphs as if fully set forth herein.

51. Pursuant to § 1983, Mr. Bolin seeks to vindicate his injuries caused by the Defendants' violations of his rights under the Fourteenth of the U.S. Constitution to be free from

excessive and unreasonable use of force against him. *Kingsley v. Hendrickson*, 576 U.S. 389, 397-98 (2015).

52. At all times relevant, all Defendants, acting as law enforcement/correctional officers of Benton County, Arkansas, were acting under color of state law.

53. While acting under color of state law, Defendants deprived Mr. Bolin of his clearly established Fourteenth Amendment rights against the use of excessive force against him.

54. Defendants' uses of force were purposeful, knowingly, and excessive, because their responses to Mr. Bolin's misperceived actions were grossly disproportionate and unreasonable to allegedly punish or gain Mr. Bolin's compliance. *Kingsley*, 576 U.S. 389, 390 (2015).

55. Examples of Defendants' excessive uses of force include Deputy Wilkins punching Mr. Bolin in the head and face more than 15 times, other Defendant officers punching and striking Mr. Bolin in various areas of his body, and multiple uses of a taser during the beatings while Mr. Bolin was not posing any threat of physical harm or otherwise challenging any legitimate government action.

56. Not only did Defendants use excessive force multiple times against Mr. Bolin, Defendant Officers also allowed their fellow officers to continue their excessive use of force against Mr. Bolin without any intervention or attempt to mitigate any risk of injury to Mr. Bolin.

57. Defendants' should have known of the risk that their multiple malicious uses of excessive force against Mr. Bolin would directly cause a number of serious, potentially permanent, injuries to Mr. Bolin, including, but not limited to, lacerations, contusions, pain, impaired vision, and impaired memory. This in turn has caused Mr. Bolin to suffer monetary damages in an amount to be proven at trial.

58. As a direct and proximate cause of action of the Defendants' malicious and sadistic excessive uses of force in violation of Mr. Bolin's federally protected rights, Mr. Bolin suffered serious injuries which entitle him to compensatory and punitive damages.

**COUNT II: Violation of Rights by Benton County, Arkansas pursuant to 42 U.S.C. § 1983**

59. Mr. Bolin incorporates all previous paragraphs as if fully set forth herein.

60. Mr. Bolin seeks to vindicate his injuries pursuant to § 1983 for violations of his federally protected rights by Benton County, Arkansas, and Sheriff Holloway.

61. Municipal bodies are liable for constitutional violations under 42 U.S.C § 1983 when execution of its official policy or customs deprives an individual of his constitutional rights. *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658 (1978).

62. A municipality is subject to liability where that municipal fails to properly train, supervise, and discipline its employees amounting in a deliberate indifference to one's constitutional rights. *See City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989); *Patzner v. Burkett*, 779 F.2d 1363, 1367 (8th Cir. 1985).

63. At all times relevant, Defendant Benton County, Arkansas and Benton County, Arkansas Sheriff's Office had a duty to properly train, supervise, and discipline their employees and agents.

64. Defendants breached that duty by: **(a)** improperly training, authorizing, encouraging, or directing officers on proper use of force; **(b)** failing to investigate allegations of excessive force; **(c)** failing to discipline officers for violations of policy related to excessive force; **(d)** establishing custom and/or policy permitting excessive force. *Id.*

65. This unconstitutional behavior of Defendant Officers was carried out pursuant to a policy, pattern of practice, or custom, whether formal or informal, which violates federally

protected rights of persons situated such as Mr. Bolin. The policy, pattern of practice, or custom of condoned misconduct is tacitly or overtly sanctioned, as evidenced by the conduct of Defendant Officers and the Defendant entities' failure to train, supervise, investigate, and discipline any of the officers involved in this incident amounting to a deliberate indifference to Mr. Bolin's federally protected rights.

66. As a direct and proximate cause of the actions of the Defendants, Mr. Bolin suffered serious injuries which entitle him to damages.

### COUNT III: Violations of the Arkansas Civil Rights Act

67. Mr. Bolin incorporates all previous paragraphs as if fully set forth herein.

68. Defendants' conduct also violated Mr. Bolin's rights under the Arkansas Constitution and thus he additionally seeks redress pursuant to the Arkansas Civil Rights Act ("ACRA"), Arkansas Code Annotated § 16-123-105, for which this Court has supplemental jurisdiction.[1]

69. At all times relevant, because they were acting as law enforcement officials, Defendant were acting under color of statutes, ordinances, regulations, customs, or usage of the State of Arkansas and its political subdivisions—namely, Benton County, Arkansas.

70. Similar to the Fourth Amendment of the U.S. Constitution, Article 2, Section 15 of the Arkansas Constitution provides that, "[t]he right of the people of this State to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."[2]

---

[1] The relevant part of the ACRA provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage of this state or any of its political subdivisions subjects, or causes to be subjected, any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Arkansas Constitution shall be liable to the party injured in an action in circuit court for legal and equitable relief or other proper redress." A.C.A. § 16-123-105(a).

[2] For reference, Ark. Code Ann. A.C.A. § 16-123-105(c) states: "When construing this section, a court may look for guidance to state and federal decisions interpreting the federal Civil Rights Act of 1871, as amended and codified in 42 U.S.C. § 1983, as in effect on January 1, 1993, which decisions and act shall have persuasive authority only."

71. As with Counts I and II above, Defendants violated Mr. Bolin's clearly established state constitutional rights to be free from excessive, unreasonable, and unjustified use of force.

72. Examples of Defendants' excessive use of force include Deputy Wilkins punching Mr. Bolin in the head and face more than 15 times, other officers punching and striking Mr. Bolin in various areas of his body, and the use of a taser during both beating while Mr. Bolin was not posing a threat of physical harm or risk of escape from custody.

73. Not only did multiple Defendants use excessive force against Mr. Bolin, officers, including Corporal Vinson, Sergeant Franks, and others, allowed their fellow officers to continue their excessive use of force against Mr. Bolin without intervening.

74. Further, the Benton County Sheriff's Office, Sheriff Holloway, and by extension Benton County, Arkansas, violated Mr. Bolin's clearly established constitutional rights under the Fourth Amendment to be free from excessive use of force by mainlining official policies and unofficial customs allowing such uses of force, and by failing to properly train officers in use of force.

75. Defendants' uses of force were unreasonable, unjustified, and excessive, because their responses to Mr. Bolin's perceived actions were grossly disproportionate and unnecessary to gain Mr. Bolin's compliance. At no time did he pose a threat of physical harm to the Defendants nor was he attempting to escape from their custody.

76. Defendants' uses of excessive force against Mr. Bolin directly caused a number of serious injuries to Mr. Bolin, including, but not limited to, lacerations, contusions, pain, impaired vision, and impaired memory. This in turn has caused Mr. Bolin to suffer monetary damages in an amount to be proven at trial.

77. Because of their excessive uses of force in violation of Mr. Bolin's clearly established rights, Defendants are not immune from liability by virtue of qualified immunity, statutory immunity, or any other theory of immunity.

78. The Defendants actions were willful and intentional retribution for Mr. Bolin's misperceived failure to follow instructions or were done with reckless disregard to the consequences of those actions, from which malice may be inferred, entitling Mr. Bolin to punitive damages.

## COUNT IV: CIVIL ACTION BY A CRIME VICTIM PURSUANT TO ARK. CODE ANN. § 16-118-107

79. Mr. Bolin incorporates all previous paragraphs as if fully set forth herein.

80. Arkansas Criminal Code Annotated § 5-13-202, Battery in the Second Degree, in pertinent part, states:

> *(a) A person commits battery in the second degree if:*
>
> > *(1) With the purpose of causing physical injury to another person, the person causes serious physical injury to another person;*
>
> *(b) (2) [B]attery in the second degree is a Class D Felony.*

81. Mr. Bolin has suffered direct and consequential injuries by reason of Defendant Officers conduct that would constitute a felony under Arkansas law. Defendant Officers brutally punched, kicked, and tased Mr. Bolin on multiple occasions during his incarceration in the Benton County Detention Center causing him serious physical injuries.

82. Further, Defendant Officers knew their actions would result in injury, and continued such conduct with purpose and malice, or in reckless disregard of the consequences

thereof such that malice and purpose may be inferred, such that the imposition of punitive damages is warranted.

83. As a crime victim, pursuant to Ark. Code Ann. § 16-118-107, Plaintiff is entitled to recover damages suffered by the criminal act of the Defendant Officers.

84. Pursuant to Ark. Code Ann. § 5-2-101(13)(a), a person as defined in Ark. Code Ann. § 5-16-101 also includes Defendant Benton County, Arkansas as it is an organization under Arkansas law.

85. Pursuant to Ark. Code Ann. § 5-2-502(a)(2), the agents of Defendant Benton County, Arkansas engaged in, authorized, solicited, requested, commanded, or recklessly tolerated the actions of Defendant Officers' unreasonable, unjustified, excessive, and brutal beatings of Mr. Bolin on multiple occasions while Mr. Bolin was in custody at the Benton County jail causing Mr. Bolin severe and permanent injury.

86. Pursuant to Ark. Code Ann. § 16-118-107(a)(3), Mr. Bolin is entitled to his attorney's fees and costs upon prevailing on this Count.

## Jury Demand

87. Mr. Bolin demands a jury trial on all issues so triable.

## Prayer for Relief

Mr. Bolin respectfully requests judgment against Defendants for monetary damages sufficient to compensate him for his injuries and damages, as well as a judgment for punitive damages. Mr. Bolin also requests an order granting him all reasonable and allowed interest, costs, attorney fees pursuant to 42 U.S.C. § 1988, and any other relief to which he shows himself entitled.

Respectfully submitted,
Brad Bolin, *Plaintiff*

By: */s/ John E. Baureis*

**COMPLAINT** – Page 14

John E. Baureis, Ark. Bar No. 2005266
MILLER, BUTLER, SCHNEIDER,
   PAWLIK & ROZZELL PLLC
323 W. Spring St.
Fayetteville, Arkansas 72701
Phone: (479) 621-0006
Fax : (479) 631-6890
jbaureis@arkattorneys.com


 /s/*Alicia M. Canfield*
Alicia M. Canfield, Ark. Bar No. 2021173
MILLER, BUTLER, SCHNEIDER,
   PAWLIK & ROZZELL PLLC
224 S. 2nd Street
Rogers, AR 72756
T: (479) 621-0006
F: (479) 631-6890
acanfield@arkattorneys.com


*Attorneys for Plaintiff*

**COMPLAINT** – Page 15